### STATE *v.* MORGAN *& a.*

When the statute of 1791, directing proceedings in case of forcible entry or detainer of lands or tenements, was repealed, in the revision of the statutes in 1842, the common law and English statutes in relation to such proceedings, so far as they had been adopted in this state, were also repealed.

INDICTMENT, for forcible entry and detainer.   The respondents offered to show that Morgan was mortgagee of the premises upon which the alleged offence was committed; that he recovered a judgment for the possession of the mortgaged premises, and was put in possession by the sheriff in June, 1875, by virtue of a writ of possession upon which due return was made ; that the complainant, Robinson, who was the mortgageor, and in occupation of a portion of the dwelling-house upon the premises, was a mere trespasser and wrong-doer, in possession without right (having been suffered to remain by the officer), and refusing to leave; that Morgan and the other respondents, as his servants, entered forcibly, in April, 1878, and expelled him.   The evidence was rejected, and the respondents excepted.   A verdict of guilty was directed against three of the respondents, and the case withdrawn as to the others, and continued, to await the decision of the questions of law raised by the rejection of the evidence.

*Pike & Parsons* (with whom was *Whipple*), for the respondents.

*Tappan*, attorney-general (with whom were *Barnard & Barnard*), for the state.

SMITH, J.   Whether we have any statute in relation to forcible entry or detainer in force in this state is a question not raised at the trial.   The respondents, however, in the argument before us, have contended that neither the common law, nor the common law as modified by the English statutes upon that subject, is in force here.

An indictment could be supported at common law for a forcible entry.   2 Chit. Cr. L. 1121, 1124; 1 Bish. Cr. L., s. 537; 2 ib., s. 490; *Rex* v. *Wilson*, 8 T. R. 357, 360; *Commonwealth* v. *Shattuck*, 4 Cush. 141.   The earliest statute was that of 5 Ric. 2 (A. D. 1382), which merely prohibited the offence of forcible entry on pain of imprisonment, and was only an affirmance of the common law of England.   It is said that this statute became a part of the common law of this country.   2 Bish. Cr. L., s. 492.   This statute was followed, in 1392, by that of 15 Ric. 2, c. 2, the chief effect of which was to provide for a summary conviction of offenders by magistrates, on view.   The next statute was that of 8 Hen. 6, c. 9 (A. D. 1429), which extended the remedy to cases where the entry was peaceable, but was followed by a forcible detainer—*Rex* v. *Wilson*, 3 A. & E. 817—although forcible detainers were indictable at common law.   2 Bish. Cr. L., s. 494.   By this statute the justices were authorized to reseize the lands entered upon, and put the party expelled into full possession.   The statute of 31 Eliz., c. 11 (A. D. 1589), prohibited restitution if the person indicted had been in possession three years, and restitution could not be made unless the party expelled was seized of an estate in fee.   The statute of 21 Jac. 1, c. 15 (A. D. 1623), provided that restitution should be made, not only to those seized of a freehold, but to tenants for years, tenants by copy of court-roll, guardians by knight's service, tenants by *elegit*, statute merchant, and staple.

These different acts of parliament have been held in England not to repeal the common law in relation to forcible entry, but to provide additional legislation on the subject.   Hence, in an indictment at common law, it was necessary to allege merely that the complainant was in the peaceable possession of the premises entered upon, while under the statute of 8 Hen. 6, or 31 Eliz., it was necessary to allege that the prosecutor was seized in fee in the premises; and in an indictment under the statute of 21 Jac. 1, that the complainant was seized of a freehold, or was possessed for a term of years, because restitution of the land was the principal reason for indicting, and at common law there could be no restitution, and, under the statutes, no restitution to one seized or possessed of an estate less than that mentioned in them.   *Rex* v. *Bake*, 3 Burr. 1731; Rosc. Crim. Ev. 483; 2 Chit. Cr. L. 1121; *Rex* v. *Wilson*, 8 T. R. 357; 3 Bl. Com. 179; 4 ib. 148; *Commonwealth* v. *Shattuck*, 4 Cush. 141.

The earliest legislation in New Hampshire upon the subject, of which we find any trace, was the statute of 1714 (13 Anne, c. 31),

Province Laws 43 (ed. 1771), cited in *State* v. *Pearson*, 2 N. H. 550, 551. This statute remained in force until 1792 (Laws of 1797, *p.* 442), when it was superseded by the act of Feb. 16, 1791, which went into effect Sept. 15, 1792 (Laws of 1797, *p.* 127), and was repealed in 1842 (Rev. St., 478). This statute empowered two justices of the peace, *quorum unus*, to inquire, by a jury of twelve, of any forcible entry or detainer of lands or tenements, and if the verdict was guilty, they were required to enter up judgment for the complainant to have restitution, without inquiring into the merits of the title of either party, and to impose a fine of £4, and award a writ of restitution; and from their judgment there was no appeal. Section six provided that the act should not extend to any person who had been in the quiet possession by the space of three whole years together next before the filing of the complaint, and whose estate was not ended or determined. In 1823, and while this statute was in force, it was held, in *State* v. *Pearson*, 2 N. H. 550, that at common law, and by virtue of the statutes in amendment of the common law, any person who is seized of land in fee, for life, or possessed thereof for a term of years, and who is, with strong hand and armed power, turned out of possession, or held out of possession in the same manner, may have this process.

The commissioners of revision, in their report to the legislature in 1842, retained the statute of 1791 (see report, *c.* 206, title, Forcible Entry and Detainer). But the legislature struck out the chapter, and inserted in the list of acts repealed the title of the act of 1791. Rev. St. 478. At the same time the legislature inserted in the revision *c.* 113, relating to offences against the police of towns, to be in force in the whole state, and which had previously been in force only in Portsmouth and such other towns as had voted to adopt it. Included in the offences described in *c.* 113 is the offence of brawl and tumult, punishable by fine or imprisonment. By this action of the legislature we think it was intended to repeal the common law, as well as the statute relating to forcible entry and detainer. The statutes, English and American, as well as the common law, had become obsolete in a great measure; and experience had shown that they had often been used as instruments of oppression, and not for redressing wrongs. It is apparent that the court, in *State* v. *Pearson*, regarded the common law as to forcible entry and detainer in force in this state, so far, at least, as it was modified by the statutes; and if, when the statute of 1791 was repealed, there could be any doubt as to whether the common law would be in force here, such doubt was removed, as before suggested, by the enactment of *c.* 113, Rev. St.

The respondents offered to show that Morgan was the owner of the premises upon which the alleged offence was committed, and that Robinson was a trespasser. The evidence on the part of the state disclosed no title in Robinson, and that at most he was a mere

tenant at sufferance. The officer who executed the writ of possession suffered him to remain in the occupation of the dwelling-house, instead of taking sufficient force and removing him from the mortgaged premises. But the return is conclusive upon Robinson, and he is estopped, both by the return and the judgment, to show that Morgan was not entitled to possession. Being in the occupation of the dwelling-house without right, except by the sufferance of Morgan, he cannot maintain trespass *qu. cl.* against Morgan for asserting his right to regain the possession by force. *Taunton* v. *Costar*, 7 T. R. 431 ; *Hyatt* v. *Wood*, 4 Johns. 150 ; *Sampson* v. *Henry*, 13 Pick. 39 ; *Mugford* v. *Richardson*, 6 Allen 76 ; *Sterling* v. *Warden*, 51 N. H. 217, 234 ; *Haley* v. *Colcord, ante*, 7, 8 ; *Hopkins* v. *Dickson, ante*, 235. If, in entering and taking possession, Morgan committed acts in excess or abuse of his right, and Robinson was injured, he can recover for his personal injuries in an action brought for that purpose, and the criminal statutes afford the public a remedy for the breach of the peace, if any occurred. For these reasons, we are of opinion that this indictment cannot be maintained.

*Verdict set aside.*

FOSTER, J., did not sit: the others concurred.